Next case on the argument calendar is Aponte v. Kandur We have Ms. Kaplan by way of video today. Can you hear us okay, Ms. Kaplan? Yes, I can. Are you able to hear me? Yes. Excellent. And Mr. Desilio is in the courtroom. Yes, sir. So we have received a request to seal the oral argument with respect to one issue where there was sealing of the documents in the district court. I granted that application, but I just want to make clear that when we get to that part of the argument, I first want to have a discussion about whether or not, in fact, the argument should be sealed. I wanted to give an opportunity to both sides to persuade us as to why that part of the argument needed to be sealed. So the way we'll proceed today is we will have the argument on the other two issues that are in the appeal first. Then we will seal the proceeding, the argument to listen to the reasons for sealing the last issue. And if we are unpersuaded, we will then unseal it. If we are persuaded, then we will do that part under seal. Okay. So, Ms. Kaplan, I understand on the first two issues you want three minutes and one minute in rebuttal. Is that correct? Yes, Your Honor. All right. So you can go ahead. Good morning, Your Honors. May it please the Court. My name is Lauren Kaplan, and I am pro bono counsel for appellant John Aponte. Mr. Aponte brought a claim for excessive force against F. Lee, Officer Mamet Camber, after the officer entered Mr. Aponte's home without a warrant, pushed him against a wall, and choked him. Officer Camber denied Mr. Aponte's story, though, and the case came down to a credibility contest. During a jury trial, the district court made three errors that deprived the jury of the information it needed to assess the totality of the circumstances, the test for excessive force. First, they did not learn of Officer Camber's pattern of a similar conduct and related testimony that would have impeached the officer's credibility. Second, they were told that a warrant was irrelevant. And third, they did not learn that chokeholds were strictly prohibited by the NYPD. Each of these errors alone is problematic, and their impact is compounded when considered together. Here, where the jury was required to consider the totality of the circumstances, these three compounding errors fundamentally skewed the jury's perception of the circumstances. Ms. Kaplan, this is Judge Lynch. Could you explain to me why the absence of a warrant is relevant to whether the force used was excessive? Absolutely, Your Honor. So whether there was a warrant here is – the question is whether there was a warrant when the police officers arrived at Mr. Aponte's home, and that's fundamental to the rest of the story. And the jury knew that there was no warrant, right? The jury was told that whether there was a warrant was irrelevant to their determination. Was the jury aware that there was no warrant? I believe that they were told that Mr. Aponte believed that there was no warrant. Okay. But this is – so I'm still having trouble – what I want to know is, as I read the transcript, it seemed to me the issue here was whether things happened the way Mr. Aponte said or whether they happened the way Officer Canberra said. I did not see any argument by the defense that, yes, he was choked just like he said, but that was okay because that was reasonable force in the totality of the circumstances. Am I wrong about that? You're right about that, but the jury was asked to decide both questions. One, did it happen? And two, if it happened, was it reasonable or not? But there was no argument – if it happened the way your client said it happened, there was no argument that it was reasonable. He said the officer entered through the door and immediately choked him. So whether or not he had a warrant or didn't have a warrant doesn't help – the jury didn't need to assess that because if, in fact, he walked through that door and choked him, it was excessive per se, right? Respectfully, Your Honor, I believe it was still up for grabs whether or not it was excessive per se. If he just walked in and started choking your client, they would have to know whether there was a warrant or not? Certainly there – we would argue that it was excessive regardless of whether or not there was a warrant. But nonetheless, the warrant is fundamental to the story about whether the interaction as a whole, how that's perceived by the jury. Why is the warrant fundamental to the story? You can't use excessive force if you've got a warrant. So the warrant is fundamental to the story because you have someone who is in his home. When the police arrived, they said, please come to the precinct, and he declined. If there's a warrant, he's resisting arrest, whereas if he – there's no warrant, he's well within his rights to decline. Was there any argument, A, that he was being arrested? Did the defense argue that he was to be arrested there? Or any argument that they entered in order to arrest him and that he was resisting arrest when this happened? As opposed to – I thought the defense was when the officer stepped across the threshold for whatever reason, and I'm about to ask your adversary why he crossed the threshold. But when he crossed the threshold, Aponte punched him, right? That was the officer's version. And Aponte's version was he just came in and choked me. And – but was there any contention by the defense that he was being arrested and therefore he was resisting arrest and that's what made this legitimate or any of it legitimate? So there was evidence on the record that that is what the defense wrote in his – one of the reports was that he was arresting Mr. Aponte, and that is when the punch occurred. That was one of the pieces of evidence that the jury was asked to consider. And whether or not they gave that credence was, you know, a question for the jury to decide. Can I ask you one question about the patrol guide issue? The officer testified that he hedged slightly, saying it depends on the circumstance, but ultimately said it's prohibited. And then your colleague in the closing statement said that he testified that he understood, based upon his professional training, that applying force to someone's throat is prohibited by the NYPD. And opposing counsel at trial never said anything to the opposite. And, again, this wasn't a situation where the police officer was saying I needed to choke him because of the circumstance. The police officer said I need to choke him at all. So why would the patrol guide, you know, the preclusion of the patrol guide possibly affect the outcome of this case? So, as you said, Officer Camber hesitated. He hedged and he gave an equivocal answer. He said, you know, it's prohibited, but it depends on the circumstances. So that was in support of an argument that there were circumstances here warranting the use of force. He didn't testify I used the choke hold because of the circumstance. He said I never did at all, that your client punched him in the head and he never choked him. Right? That's correct. That was his testimony. Why was the exclusion by Judge Costello of this evidence an abuse of discretion? I understand your argument that you would have liked it because it may have given you some more points to make before a jury. But we're viewing it on abuse of discretion. Wireless is an abuse of discretion. So the court does have discretion, and that discretion was abused here because, for example, in the instance of the patrol guide, there is Supreme Court precedent where the Supreme Court uses the patrol guide to assess whether or not force is excessive. The issue is whether in this particular trial is exclusion of that guide constituted an abuse of discretion. I'm just trying to get your theory about why that is so. So our theory is that it is. So abuse of discretion includes the circumstance where the outcome is sort of outside of the realm of reasonable. And our position is that exclusion of that evidence, given these circumstances, was outside of the realm of reasonable. Why? He said it didn't really bear on what the jury had to decide. I may have reached a different conclusion. My colleagues may have reached a different conclusion. But why isn't this kind of a garden-variety evidentiary matter that we leave to the discretion of the district court? So the jury had to decide not only whether or not they believed that it occurred and whether it was excessive. And police rules shape our understanding of what is acceptable conduct for police. We don't know what the jury thought here, whether they thought that chokeholds were an everyday occurrence of the police or whether they were under the impression that it's not so. They were not given sufficient information to decide where on the spectrum of reasonable a chokehold fell. And that's why we would argue that it's abuse of discretion. Basically, you're saying it was relevant because it bears on the question of what is normal police procedure and you don't see any prejudice and therefore it's a very one-sided issue. Is that basically your position? We don't see any prejudice to Officer Camber. Right. Right, correct. But, of course, part of the reason there's no prejudice is because he admitted that it was prohibited. And so that wasn't really the issue. But I understand your position is this was not a close call is really your argument on the admissibility of the patrol car. Correct. All right. Thank you, Ms. Kaplan. Thank you, Your Honors. Good morning. I plead for the Court for Mendoza-Silvio on behalf of Beth Helens. Jumping right in, we think the panel's questions get harder and harder, which is the jury instruction that Aponte and I lost and the issue of the patrol car wouldn't have gone to the central credibility contest that the jurors faced with. Namely, whether Aponte was making it up when he said that Camber had choked him. Now, regarding the use of discretion, the district court did not abuse its ample discretion over evidentiary matters to exclude the patrol car. Aponte does not seriously dispute that as standard for constitutional violations. It's not the patrol car. So the district court was free to say, you know what, I don't think the jury can see this, especially given, as Judge Munson points out, the jury knew that he had choked him. Wait a second, though. As noted, the Supreme Court has used the patrol guys. We've used the patrol guys in other cases. Many district courts have allowed the patrol guys. So just because it's not the constitutional standard doesn't mean that in these types of cases, knowing what the protocols are for the use of force in a particular situation isn't something that the jury should factor in and know about, right? I agree with you, Your Honor. The fact that other courts have it in the patrol guy doesn't underscore the use of discretion. But here the district court allowed testimony about the protocols, but not the guide itself. What would be the basis for that, especially if the officer was hedging a little bit, saying, oh, it depends on the circumstances, then the counsel could say, well, wait a second, let's look at the language. There's no, you know, it's categorical. So what's the idea of allowing the testimony about it, but not allowing the guide, that portion of the guide, to come into evidence? Why does that make sense? Judge Rodney, that's actually a great point, because in excluding the patrol guy, the district court made it clear that if we visit that ruling, if something came up in trial where a jury may see the patrol guy, and here there were points of well-respected counsel to represent him in litigating the excessive force of language trial, those attorneys didn't object when a camera allegedly sounds out, in terms of getting less than an unequivocal answer in response to the question that was posted. Under those circumstances, that really undercuts their use of discretion argument, because if it wasn't so manifest then that they thought they needed to object, it really undercuts the argument that this wasn't within the range of permissible decisions. In any event, the patrol guy, and also the jury instructions, may have helped the jury determine whether the force used, if any, was excessive, but that's a precise point. It wouldn't help the jury determine whether any choking had, in fact, occurred. So it can't show an effect on substantial rights of the patrol guy. It can't show some fundamental defect or fundamental error. So let me just back up and see whether I understand the sequence correctly. You're saying that, and I think this is borne out by the transcript, the argument about the patrol guy was in advance of Officer Canberra's testimony? Yes, it was a motion and a liminex. Motion and liminex. And the judge said she might revisit this if the time came. That's correct. Then we have the testimony of Officer Canberra. Yes. And he says, in response to the question, are there any circumstances where you're entitled to apply force to somebody's throat? He says it's prohibited, but you've got to understand the circumstances also. Every situation is different, okay, but it's a prohibited act, yes. Yes. Now, at that point, counsel had the option of saying, so your answer is, yes, it's prohibited. Isn't that right? Yes. He didn't follow up, if counsel chose. He didn't. He sat down at that, closed on that point, which is, he got a pretty good answer, and he stopped there. And you're saying no one on the plaintiff's side then raised again with the judge, look, he quibbled, he equivocated, he didn't give a definitive answer, now it's time to let in the patrol guy? Is that an accurate statement? Yes, that's accurate. Okay. And I see that my time is up. I don't have time for questions. Well, I do have one question, which is, I'm not clear on what Officer Canberra's story actually was as to why he crosses the threshold. Yes, Your Honor. Okay. And what does he say he's going to do after crossing the threshold? He says he didn't get to do anything because Aponte punches him. I understand that's the story. But did he say what his plan was? His plan was to try to create more distance between Ms. Brown and Ms. Aponte by putting her away from Mr. Aponte, and in his testimony was that he wanted to sort of shove her deeper into the apartment because they were at the threshold, the door to the apartment. And did he suggest at any point in his testimony that he was there to arrest, that he was going to arrest Mr. Aponte based on anything that he had, Aponte had done either before or during this encounter? No, there's no testimony in that regard. In fact, both Mr. Aponte and Ms. Brown testified that they said don't come in to police officers. Mr. Aponte testified that he knew he didn't have to come to the police. And Detective Gorman, I'm not sure if that's the title, but Gorman testified that she was not there to arrest Aponte and didn't have the authority to impel him to return to the precinct after arrest. So one of the officers told the jury that they did not have the authority to arrest him? Yes, that's correct. Okay, thank you. Thank you. Okay, Ms. Kaplan, you have one minute in rebuttal. Thank you. Just three quick points. First is my counterparty argued that these issues were not relevant to the credibility contest. We submit that that's not the case. As I'll argue in the next portion under seal, Mr. Aponte's reasonableness and the reasonableness of the maneuver that he used, along with the impeachment evidence that was excluded that I'll touch on, as I said, under seal, combined together to skew the jury's perception of Mr. Aponte and Officer Canberra together, and that impacted the credibility contest. Second point is this Court has held that communicating the substance of the evidence in a motion in limine was sufficient to preserve the objection under Rule 103. But when the judge makes a tentative ruling and says, no, you can't do it, but if something happens during the trial that changes the balance or makes this relevant, I may change my mind, right? I'm not sure what exactly the language the judge used in that case. Well, are you saying that the judge made a ruling that this will never come in under any circumstances because it's just irrelevant or I don't think it matters, so no? At least your adversary thinks that the judge said this was subject to possible revisitation. No, I don't dispute his characterization of it in that way. So then what I'm wondering is why wouldn't it be incumbent on counsel if it was believed at the time that the concession that was extracted from Officer Canberra wasn't good enough because it was equivocal? Why wasn't it incumbent on counsel to come back to the judge and say, look, I asked him, and he said, well, prohibited, but there's prohibited and prohibited. This isn't really prohibited under all circumstances. So I think now we need to be able to put in the patrol guide that shows that he was hedging and he was being dishonest because the fact is it's prohibited. Why isn't it necessary for the counsel to do that at that point? So absolutely that's an approach that counsel could have taken. I suppose the reason why I would say it's not incumbent is only because of this court's holding that an in limine ruling was sufficient. Okay. And I see my time is up, so I'll leave it at that. So thank you. So at this point what we're going to do is we're going to cut the live feed for now, and in the courtroom there's nobody in the courtroom other than court personnel and the parties. So initially I wanted to address whether or not we should conduct this under seal. I went back and I looked at both. I'm sorry, Your Honor. I'm not sure if you're still speaking. There's redacted briefs as well as the record below, and it seems clear to me that the appellee's brief refers to this evidentiary issue in the publicly filed brief involving an IAB report and an episode of domestic violence. So both of those things are disclosed already in the public documents in the briefs on appeal. Below, the whole discussion of this before the district court, the transcript was not under seal and is in the joint appendix at pages, at page 730, saying that the officer got arrested, involved in a domestic dispute at 740, got arrested for his crime. I'm sorry, Your Honors. I'm not sure. I can't hear anything. This all seems to be part of the public record already. I'm not sure if you can hear me. And there's also obviously the public's right to know, you know, what's being litigated in the appellate court. So I just want to give both sides a chance to speak to that issue, why we should have this under seal in light of the fact that all these things are already on the public record and the public's right to know the basis for this court's ruling with respect to evidentiary issues below. Ms. Kaplan, do you want to go first? Sure. So the issue, first of all, I'm sorry, I got cut off initially. I think when you cut the live feed, I wasn't able to hear the first minute or so of what you were saying, so I apologize if I'm repeating something. I heard the end of it and what you were asking for, so I just apologize if I'm repeating something that you already know or if it's something that you said in that first minute or so. Thankfully, the feed got reconnected. But what I would say is that this evidence is evidence of Officer Canberra's arrest and subsequent investigation into a domestic incident where he choked his wife. So we don't take issue with whether that should or should not be shared with the public. It was only subject to a protective order at the request of Officer Canberra and his counsel. Didn't you ask for the protective order? We did because I was concerned about basically violating a protective order. I did not want to violate the protective order that we agreed to at the district court level. But other than that, you're not requesting that this be under seal? Absolutely not. All right. So then let me hear from Mr. DeSilvio. Your Honor, the argument is threefold. First, as Ms. Kaplan points out, it's subject of confidentiality orders to the parties that would respect the right to that. I can't hear you. I'm sorry. I'm sorry, Your Honor. The parties seek to respect the confidentiality order of the district court. Yes, but that's a reason why you should make an application or a reason why you should be cautious. The fact that the district court entered a confidentiality order doesn't bind us in any way, right? Yes, Your Honor, but because of colleagues that are removed from the sealing order, that's why we didn't do it when it came out in the final briefs. Yeah, that's all fair enough. But the question is now. I mean, I guess my position is, and tell me if there's something wrong with this, that to say reason number one is because there was an agreement or an order in the district court really doesn't get you anywhere. Okay, we'll leave the number two word back. What is publicly available are arrest records for the fact that there was an investigation involving a domestic violence incident. What isn't publicly available is the fact that there was an accusation of strangulation. That's on page 740 of the joint appendix that is currently available to the public. He got arrested for strangling his wife. That charge will be available. But the I.V. report and the details of what his wife accused him of, I don't believe are. I don't understand where you're going with this at all. We hear testimony of that nature every day. The district, it's the kinds of things that comes up not infrequently in these kinds of cases and in criminal cases. I understand, Your Honor, and if that's the way that the panel chooses to rule, we understand. The final point I just want to make was just to— Did you know of any case where material of this nature has been the subject of a courtroom closure in the Court of Appeals? I don't. I don't. So you've got no authority for the closure that you're seeking here in this court. Is that correct? I do not have authority to persuade you otherwise, Your Honor. That's correct. The last point I make is just to prevent further dissemination of something that's in the public by sharing this. Those are the three points that I understand that the panel might disagree. Yeah, I think we're all in agreement that this should not be under seal. So the public has a right to know the grounds that are being argued. It's already been disclosed to a large extent, both in briefs here and the appendix. So we're going to conduct this publicly. So I don't know if there's a way of restoring—is there a way to restore the live feed? Yes. Can the live feed be restored? Sure. Okay. Your Honor, can I sit down? Yeah, I'm just going to wait to make sure that that is done. Thank you. Thank you. Okay, so the live feed is restored. And also, I just want the record to be clear in denying the application. We are also unsealing the portion that we just had, the discussion about whether it should be sealed or not. That recording should also be made available to the public as well. All right? All right. So, Ms. Kaplan, you have five minutes—four minutes and one minute in rebuttal. Thank you, Your Honor. May it please the Court. Again, Lauren Kaplan, poor appellant. Having already described the Court's errors related to the jury instruction and the patrol guide, I'll turn to the third error, that the District Court excluded from evidence the police internal investigation that substantiated allegations that Officer Canberra choked his wife in the very same way that he choked Mr. Aponte. The District Court, without any analysis, excluded it as pure propensity evidence, but that's not the case. This circuit takes an inclusionary approach, admitting evidence of other wrongful acts under 404B if admissible for any relevant purpose. Here, that purpose was to show a pattern of escalating a verbal dispute by pushing someone up against a wall and choking them, a relatively distinctive behavior. This Court has previously affirmed admission of similar evidence. What's the difference between a pattern and propensity? If someone robs four banks and they're on trial for another bank robbery, can the other four bank robberies come in as a pattern? Normally they would be excluded as propensity, right? So I believe the other four bank robberies, if they showed something distinctive that was a signature or an M.O., that would be allowed to come in as a pattern. But that exception is usually to establish identity. The classic law school example is Zorro, the Z. If you do the crime in such a way, and you're arguing it wasn't me, that the pattern, the distinctiveness of the crime may prove your identity, not to show propensity, right? So it can be used to show identity, and that's often the case, but that's not the only case. So in, for example, Ismael v. Cohen, in that case, it was used as a pattern of applying handcuffs too tightly, claiming false injury and falsely filing charges was enough to show a pattern of defendant lacks- Well, I looked at that case, and there was not much analysis in there, and there were other grounds, knowledge, the district court gave multiple grounds and did say pattern, but there was hardly an analysis that I think would support what you're arguing here, which is that an off-duty incident, domestic dispute, creates an evidentiary basis under 404B to allow this. Suppose it was a fight, and you punched someone in a bar, and the allegation was he did a similar thing to someone during an arrest. Would that be a pattern? So I think punching someone in a bar is not sufficient. The pattern is when he gets upset, he punches people in the head. He did that in a bar, and he did it on duty as well. I think we would submit that punching someone is insufficient to set the pattern, whereas choking someone, specifically taking a verbal dispute, pushing them up against the wall and putting them in a chokehold, is sufficient. And what I would say is that in this case, it's extraordinarily probative, the evidence as well, because the complaint was filed just three weeks before Mrs. Canberra brought her allegations to the police. The allegations mirror Ms. Durapante's, and both claimed similar injuries. And down the road, Officer Canberra said that both were lying, even when an internal affairs investigation ultimately substantiated her allegations. And I think that's a key point to think about, which is that not only was the evidence admissible under 404B, but it also is admissible under 608B for the jury to assess. When we talk about the evidence being admissible, are you saying that you should have been allowed to question Officer Canberra about this, or are you saying that you should have been allowed to put into evidence the internal affairs report? I think we would submit that we sought both, but that being said, for 608, we would have been satisfied with questioning Officer Canberra on this as impeachment. Well, under 608, you can't use extrinsic evidence, right? 608 specifically says you cannot use extrinsic evidence, right? So Rule 608, I'm sorry. I'm just going to pull up the language because, unfortunately, I don't know it off by heart. Well, you can bring up extrinsic evidence to show if they're probative for the character, for truthfulness or untruthfulness of the witness. And in this case, it's highly probative of his character for truthfulness or untruthfulness, even after the internal affairs investigation. You're essentially offering the opinion of an internal affairs officer that he believed Officer Canberra's wife rather than believing Officer Canberra, right? So it was a multiple-months-long investigation that was ultimately substantiated, and we would submit that Officer Canberra continuing to deny the allegations would be— Did the report substantiate the choking or just an assault? I didn't think the report said he choked her. It just said he assaulted her, right? So the allegations were for assault, including strangulation. Right. And the report substantiated those allegations. You're correct that it did not distinguish between choking versus other allegations. That being said, the report did include— But the choking is your pattern. I mean, are you saying if he punched his wife, that would be admissible too? Because there he's escalating a verbal dispute. He's being angry at a challenge to his authority, and he punches somebody. So we would not submit that that's admissible under 404B. But under 608B, the fact that he denies assaulting her and that despite the allegations that were substantiated— I have two questions for you on that, though. First of all, I don't think it was raised with the district court the idea of trying to contradict his deposition testimony. I didn't see anywhere in the record. It was a failure to report it to the NYPD, not using his—to show he was lying in his deposition, right? Where in the record was that raised with the district court? So she said specifically that it's not the type of evidence that would go to a character of truthfulness. She said it's only marginally relevant as to the failure to report, which was what was raised below. On appeal, you're arguing, well, we wanted to contradict his deposition testimony, but I didn't see that at all in the trial record. I think perhaps our takeaway was slightly different from the conversation, but our takeaway was that we weren't to raise it for impeachment purposes. All right, but to prove that he was lying in his deposition about the choke, you would certainly have to use extrinsic evidence. The only way that would be probative is if you showed that that was a lie, right? Well, I think that we— As Judge Lynch pointed out, you would have to put in something, right? So I think that we could have asked him about his deposition testimony, and in that deposition testimony, he acknowledged that there was a substantiated investigation, but then denied such that his wife was lying. And for that to have probative value on his truthfulness, you would have to show that that deposition testimony was a lie, right? Well, no, I think that he acknowledged— I think the deposition testimony itself would have been sufficient because he said there was this investigation, I was accused of strangulation, they substantiated the investigation, but she was lying. And I think that that is probative of his character for truthfulness, and that would have been relevant for the jury to consider. And assuming it was potentially relevant, isn't this again quintessentially a discretionary judgment? I mean, I would imagine that if this evidence had been allowed in and you had won the trial, we'd have an appeal by the other side arguing that it was an abuse of discretion to let it in. And very possibly we would say, no, it wasn't an abuse of discretion, it might or might not be what I would have done, but these are close calls, and the trial judge makes them. But it seems to hardly have been a frivolous argument on appeal if this had gone the other way, to come to us and say, essentially what you're saying now, only the flip side, that this was the wrong call. So certainly the Court has discretion here. We submit that it's an abuse of that discretion because it excluded in a case where credibility was the key issue. That was the fundamental issue here. In addition, in a case where the jury was deprived of hearing about other information that would have impacted the credibility contest. The jury knew that he had, following the IAV investigation, an adverse rule. No. We were prevented from providing that information to the jury. All right. Thank you, Ms. Kaplan.  I think it would be more likely to believe his account that he had been strangled. And there was enough to distinguish the account in the IAV report from the story that Ponte told at trial to allow the district court to say, I don't think it shows the path, particularly given that it did not substantiate the choking allegation in one way or another. And so this district court would have perfectly committed to be concerned about the risk of underconfusion, as well as undue prejudice to Mr. Canber had it been omitted. And that the guard, Mr. Ponte, can't seriously dispute the fact that the district court could have decided that the prejudice to Canber substantially outweighed any progress in this report. And finally, regarding... Well, why wasn't it relevant to his credibility? Why was counsel not permitted to explore this as a credibility issue? So, Judge Parker, I don't think I'll stand before you and say that the district court couldn't have ruled that way, but they didn't. And that was an abuse of discretion because Mr. Ponte's argument focuses on what Sergeant Canber said in his deposition. But expressing the feeling that someone accuses you of something is lying, while admitting that the accusation was made, that there was a charge brought, and an IAV investigated that they substantiated assault, that just didn't reveal some sort of fundamental defect in his character or trustworthiness, such that the district court was compelled to agree to the argument that Mr. Ponte now makes. Can you point me... I couldn't even find in the record where this issue about the deposition was raised in this context. The credibility argument was about a failure to report it. Was this issue regarding wanting to impeach him by showing that his deposition was a lie? Was that raised with the district court or not? It was not raised during the trials in my recollection. I believe it exists anywhere within Mr. Ponte's motion It's not in there. It's not in there. It would also be somewhat unusual, I think, to argue that we think the witness lied in his deposition about something that we may or may not be even entitled to ask him about at trial. And so we want to show that he's a liar who should not be believed in his trial testimony because he said something false in his deposition about something that otherwise wouldn't come in. Now, I mean, maybe this otherwise could come in. That's the pattern argument and so on. But the credibility issue independent of the pattern issue strikes me as a stretch. I agree with the objection that it's a bit trulier. And here, Sgt. Camber's deposition testimony was a two-step trial in an attempt to impeach him in some instances. But here he just didn't say anything where what he said in the deposition regarding the IV report would have revealed anything about his credibility. Right. The deposition would be used to the extent that there's an argument that what he said there was inconsistent with what he said at trial or something like that, which is different than just injecting. Didn't we talk about something that the jury hasn't heard about yet at trial? And you lied about that, right? That's sort of what the credibility argument boils down to, I think. I agree with you, Your Honor. I was here when Judge Goplin was exercising his testimony. Her discussion said, you know what? I'm not buying what you're telling me. They just can't show me this discussion just because the deposition argument is wrong. Thank you, Your Honor. Thank you. Ms. Goplin, you have two minutes in rebuttal. Thank you, Your Honors. So just two points. First is that my counterparty, he did not, I don't believe, provide any authority to support the argument that the events were too dissimilar to be probative. There's nothing in their briefs to suggest that you can't use an off-duty incident in order to show a pattern. And then second of all is thinking about the jury, what the jury was charged with here, which was to consider the totality of the circumstances. Nonetheless, they were deprived of evidence that should have been included in their consideration. So not only the issue that we're talking about now, the IAB report and the relevant impeachment evidence, but also the erroneous jury instruction and exclusion of the patrol guide. So, you know, each one on their own, we submit as reversible error, but particularly in conjunction, that this constellation of errors prevented the jury from hearing the totality of the circumstances and prejudice Mr. Aponte. So with no further questions, thank you, Your Honors. All right. Thank you to both of you. We will reserve decision. Have a good day. The remaining two cases on the calendar are on submission, United States versus Michael Molino and Cesar Orlando Miguel versus Garland. So that completes the business of the court today. I will ask our courtroom deputy, Ms. Rodriguez, to adjourn court. Thank you.